Levi M. Plesset (SBN 296039)
LAW OFFICE OF LEVI M. PLESSET
P.O. Box 1248
Haiku, Hawaii 96708
Telephone: (510) 499-7100
Email: levi@plessetlaw.com

David A. Baldwin (SBN 301970)
LAW OFFICE OF DAVID BALDWIN
333 S. Grand Avenue, Suite 3310, 33rd Floor
Los Angeles, California 90071
Telephone: (323) 595-3989
Facsimile: (323) 417-5176
Email: david@davidbaldwinlaw.com

Attorneys for Plaintiff YALINDA ROBINSON,
and all others similarly situated

**UNITED STATES DISTRICT COURT**
**THE CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| YALINDA ROBINSON, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>RB HEALTH (US) LLC., a Delaware limited liability company; and DOES 1 through 50, inclusive,<br><br>Defendants. | Case No.: 2:26-cv-04765-AS<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT FOR:**<br><br>(1) Violation of the Unfair Competition Law (Bus. & Prof. Code §§ 17200 et seq.);<br>(2) Violation of the False Advertising Law (Bus. & Prof. Code §§ 17500 et seq.); and,<br>(3) Violation of the Consumer Legal Remedies Act (Civ. Code §§ 1750 et seq.)<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Yalinda Robinson ("Plaintiff"), on behalf of herself, all others similarly situated, and the general public, by and through her undersigned counsel, hereby sues Defendant RB HEALTH (US) LLC ("Defendant") and, upon information and belief and investigation of counsel, alleges as follows:

# I. INTRODUCTION

1. Defendant makes, distributes, sells, and markets a wide variety of dietary supplements under the brand name Airborne. The products at issue in this action include Airborne Vitamin C 1,000 mg Very Berry Chewable Tablets, but are not limited to, based on information and belief, the following, in any size, count, or variation: Airborne Vitamin C 1,000 mg Zesty Orange Chewable Tablets; Airborne Immune Support Gummies (750 mg Vitamin C); Airborne Vitamin C + Zinc Gummies; Airborne Elderberry + Zinc + Vitamin C Gummies; and Airborne Triple Action Immune Support Effervescent Tablets. (collectively, the "Products"). Products shall also include similarly mislabeled supplements as revealed upon future discovery and continuing investigation.

2. Defendant deceptively labels certain of its Airborne Products by misrepresenting the dosage amount of each chewable tablet, gummy, or effervescent tablet. Specifically, the front labels of the Airborne Products prominently advertise a certain dosage amount of Vitamin C, for example, "VITAMIN C 1,000 MG." Reasonable consumers are led to believe that each chewable tablet, gummy, or effervescent tablet contains the advertised dosage amount, for example, 1,000 milligrams of Vitamin C in each chewable tablet.

3. The truth, however, is that each chewable tablet, gummy, or effervescent tablet does not contain the advertised dosage amount. Instead, each chewable tablet, gummy, or effervescent tablet contains only a fraction of the advertised dosage and consumers must ingest two or more chewable tablets, gummies, or effervescent tablets to achieve the advertised dosage. As a result, consumers grossly overpay for the Products, receiving only a fraction of the advertised value while paying the full purchase price.

4. Plaintiff read and relied upon Defendant's advertising when purchasing one or more of the Airborne Products and was damaged as a result.

5. Plaintiff brings this action on behalf of herself and all other similarly situated California consumers, alleging violations of the California Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750 et seq. ("CLRA"), Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 et seq. ("UCL"), and False Advertising Law, Cal. Bus. & Prof. Code §§ 17500 et seq. ("FAL").

6. Plaintiff seeks an order compelling Defendant to (a) cease marketing the Products using the misleading and unlawful tactics complained of herein, (b) destroy all misleading deceptive, and unlawful materials, (c) conduct a corrective advertising campaign, (d) restore the amounts by which it has been unjustly enriched, and (e) pay restitution damages, as allowed by law.

## II. JURISDICTION AND VENUE

7. This Court has original jurisdiction under 28 U.S.C. § 1332(d)(2) (The Class Action Fairness Act) because the matter in controversy exceeds the sum or value of $5,000,000 exclusive of interest and costs and because Plaintiff and the putative Class reside in states other than the state of which Defendant is a citizen.

8. The Court has personal jurisdiction over Defendant. Defendant purposely availed itself to California because Defendant does business within this judicial district, sells the Products in this judicial district, and is committing the acts complained of herein within this judicial district.

9. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because the injury in this case substantially occurred in this District. Defendant has intentionally availed itself of the laws and markets of this District through the marketing, distribution, and sale of the Products in this District, and is subject to personal jurisdiction of this District.

## III. PARTIES

10. Defendant RB HEALTH (US) LLC is a Delaware limited liability company with its principal place of business outside the State of California. Defendant manufactures, markets,

distributes, advertises, and sells the Products throughout California and the United States, including through brick-and-mortar retailers and online marketplaces. Defendant is responsible for the making, labeling, distribution, selling, and marketing of the Products throughout the applicable statute of limitations period.

11. Plaintiff Yalinda Robinson ("Plaintiff") is, and at all relevant times was, a citizen and resident of Los Angeles County, California. During the Class Period, Plaintiff purchased the Airborne Vitamin C 1,000 mg Very Berry Chewable Tablets Product at a retail store in Los Angeles County in December of 2025 for approximately $18.49 for personal, household, and family use. Plaintiff saw the representations made on the Product's label prior to and at the time of purchase and understood them as representations and warranties that each chewable tablet of the Product contained the advertised 1,000 mg of Vitamin C. Plaintiff relied on the representations made on the Product's label in deciding to purchase the Product. However, each tablet actually contains only 250mg of Vitamin C—only one quarter of the amount set forth on the front label. These representations and warranties were part of her basis of the bargain, in that she would not have purchased the Product, or would only have been willing to purchase it at a lower price, had she known the representations were false. Plaintiff would consider purchasing the Products again if the advertising statements on the Products' labels were, in fact, truthful and represented in a manner as not to deceive consumers.

## IV. <u>NATURE OF THE ACTION</u>

12. Based on information and belief, Defendant continues to sell the following Airborne branded products (the "Products") with misleading dosage representations on the Products' packaging and labels: Airborne Vitamin C 1,000 mg Zesty Orange Chewable Tablets – [more than one (1) chewable tablet is required to achieve the advertised dosage of 1,000 mg of Vitamin C]; Airborne Vitamin C 1,000 mg Very Berry Chewable Tablets – [more than one (1) chewable

tablet is required to achieve the advertised dosage of 1,000 mg of Vitamin C]; Airborne Immune Support Gummies – [two (2) gummies are required to achieve the advertised dosage]; Airborne Vitamin C + Zinc Gummies – [two (2) gummies are required to achieve the advertised dosage]; Airborne Elderberry + Zinc + Vitamin C Gummies – [two (2) gummies are required to achieve the advertised dosage]; Airborne Triple Action Immune Support Effervescent Tablets – [two (2) effervescent tablets are required to achieve the advertised dosage].

13. True and correct images of the Airborne product purchased by Plaintiff is pictured below. These images and their content are incorporated herein by reference.







14. Defendant's dosing representations are prominently and conspicuously displayed on each of the Products' principal display panel to grab the consumer's attention.

15. Contrary to the prominently advertised dosage amount on each of the Products' labels, each chewable tablet, gummy, or effervescent tablet contains only a fraction of the advertised dosage amount. For example, consumers must ingest four chewable tablets of the Airborne Vitamin C 1,000 mg Very Berry Chewable Tablets Product to achieve the advertised 1,000 mg dosage of Vitamin C. This leads consumers to overpay for the Products by a significant margin.

16. Defendant's advertising misleads reasonable consumers into believing that each chewable tablet, gummy, or effervescent tablet contains the advertised dosage of Vitamin C.

However, contrary to the labeling, each unit only contains a fraction of the advertised Vitamin C. Consequently, reasonable consumers believe that they are receiving more Vitamin C per unit than what they are actually receiving. As a result, Defendant charges consumers a premium for the Products, while cutting costs and reaping the financial benefits of selling dietary supplements with less than the advertised per-unit dosage.

17. The label misrepresentations are material to reasonable consumers, including Plaintiff. The dosage representations (number of milligrams) convey the amount of Vitamin C provided by the Products, and the primary purpose of the Products is to provide the amount of Vitamin C advertised by the Product labels. Accordingly, reasonable consumers are likely to be deceived by the Products' labels.

18. Over the past 20 years, there has been a significant increase in the prevalence of supplement use. The dietary supplement market has been growing in terms of sales and products available on the market. Consumers are being presented a large number of products, brands, and formulations, distributed through a wide variety of marketing channels. The value of the global dietary supplements market was estimated to be worth nearly USD 152 billion in 2021, and is expected to be worth USD 300 billion by 2028.

19. In response to consumers' desire for dietary supplements, many companies, like Defendant, have scrambled to manufacture, market, and sell purportedly high dosages of Vitamin C, at the same or lower costs, in an effort to gain market share and outsell competitors. Unfortunately, rather than creating the actual high-dosage dietary supplements that consumers desire, Defendant makes Products that deliver a lower dosage of Vitamin C per unit, and then markets the Products to consumers through deceptive labeling and packaging claims. In doing so, Defendant misleads consumers into believing that each chewable tablet, gummy, or effervescent tablet contains a higher dosage of Vitamin C than is actually contained therein.

20. Defendant's competitors correctly label and sell their Vitamin C supplements to accurately reflect the correct amount of Vitamin C contained in each chewable tablet, gummy, or effervescent tablet unit. They do so by specifying on the front label the amount of Vitamin C per chewable tablet, gummy, or effervescent tablet unit.

21. Alternatively, Defendant's competitors disclose on their products' front labels that the advertised dosage amount does not apply per individual chewable tablet, gummy, or effervescent tablet, and instead applies "per serving." Defendant chose not to adopt either disclosure practice for the Airborne Products.

22. By falsely, misleadingly, and deceptively labeling and advertising the Products, Defendant sought an unfair advantage over its lawfully acting competitors.

23. Plaintiff Yalinda Robinson purchased the Airborne Vitamin C 1,000 mg Very Berry Chewable Tablets Product at a retail store in Los Angeles County in or around December of 2025 for approximately $18.49 in reliance on the Products' front-label advertising.

24. In deciding to purchase the Products, Plaintiff read and relied on the dosage information displayed on the front labels, which led Plaintiff to believe that each chewable tablet of the Airborne Vitamin C 1,000 mg Product contained the advertised dosage – 1,000 mg of Vitamin C per chewable tablet. At the time of purchase, Plaintiff did not know that the advertised dosage was false and misleading, and that more than one chewable tablet would need to be consumed to receive the advertised 1,000 mg of Vitamin C. In fact, it requires consuming four of the chewable tablets to receive the advertised 1,000 mg of Vitamin C.

25. Plaintiff would not have purchased the Products, or would not have paid as much as she did, had she known that each chewable tablet contained only a fraction of the advertised dosage. Plaintiff paid a premium for the Products due to the misleading labeling on the Products' packaging.

26. The representations on the Products' label were and are false and misleading, and had the capacity, tendency, and likelihood to confuse or confound Plaintiff and other consumers acting reasonably (including the putative Class) because, as described in detail herein, the Products'labels misrepresent the dosage of each chewable tablet, gummy, or effervescent tablet.

27. Plaintiff acted reasonably in relying on the challenged claims that Defendant intentionally, prominently, and uniformly placed on the Products' labels and packaging with the intent to induce average consumers into purchasing them.

28. Plaintiff, in the exercise of reasonable diligence, could not have discovered earlier Defendant's unlawful acts described herein because the violations were known to Defendant, and not to Plaintiff, throughout the Class Period herein.

29. Plaintiff paid more for the Products, and would only have been willing to pay less or unwilling to purchase them at all, absent the false and misleading labeling statements complained of herein.

30. For these reasons, the Products were worth less than what Plaintiff paid for them.

31. Plaintiff would like to, and would consider, purchasing the Products again when she can do so with the assurance that the Products' labels are truthful and consistent with the Products' ingredients.

32. Plaintiff continues to be a consumer of immune support supplements, purchasing them at both retail and online locations. Plaintiff seeks injunctive relief as she will be unable to rely on the Products' labeling and advertising in the future and thus will not purchase the Products although she would like to. Plaintiff will be unable to verify the veracity of the labeling and advertising upon purchase, particularly as to online purchases where Supplement Facts are not provided. Further, Plaintiff and the putative class are entitled to rely on Defendant's statements even if they previously learned that some of those statements were false or deceptive.

33. Plaintiff lost money as a result of Defendant's deceptive claims and practices in that she did not receive what she paid for when purchasing the Products.

34. Plaintiff detrimentally altered her position and suffered damages in an amount equal to the premium she paid for the Products.

35. The senior officers and directors of Defendant allowed the Products to be sold with full knowledge or reckless disregard that the challenged claims are fraudulent, unlawful, and misleading.

## SUBSTANTIAL SIMILARITY

36. Defendant's Airborne Products described herein are substantially similar, as they each contain a dosage representation conspicuously and prominently placed on the primary display panel of the Products' front labels, and require consumption of more than one (1) chewable tablet, gummy, or effervescent tablet to obtain the advertised dosage of Vitamin C or active supplement.

37. The misleading advertising on the Products' front labels are all the same: consumers are led to believe that each chewable tablet, gummy, or effervescent tablet contains the advertised dosage amount; however, the Products only contain a fraction of the amount of Vitamin C or supplement advertised. Consumers therefore only receive a fraction of the amount of Vitamin C or supplement promised and pay more than what the Products would be worth had Defendant's advertising been true.

## NO ADEQUATE REMEDY AT LAW

38. Plaintiff seeks damages and, in the alternative, equitable restitution. Plaintiff and members of the class are entitled to equitable relief as no adequate remedy at law exists.

39. The statutes of limitations for the causes of action pled herein vary. Class members who purchased the Products more than three years prior to the filing of the complaint will be

barred from recovery if equitable relief were not permitted under the UCL.

40. The scope of actionable misconduct under the unfair prong of the UCL is also broader than the other causes of action asserted herein. It includes Defendant's overall unfair marketing scheme to promote and brand the Products over a long period of time in order to gain an unfair advantage over competitor products. The UCL also creates a cause of action for violations of law (such as statutory or regulatory requirements and court orders related to similar representations and omissions made on the type of products at issue). This is especially important here because Plaintiff alleges Defendant has committed "unlawful" acts and brings a claim for violation of the UCL's "unlawful prong." Plaintiff's UCL unlawful prong claim does not rest on the same conduct as her other causes of action, and there is no adequate remedy at law for this specific unlawful claim. Plaintiff and class members may also be entitled to restitution under the UCL, while not entitled to damages under other causes of action asserted herein (e.g., the FAL requires actual or constructive knowledge of the falsity; the CLRA is limited to certain types of plaintiffs (an individual who seeks or acquires, by purchase or lease, any goods or services for personal, family, or household purposes) and other statutorily enumerated conduct).

41. Injunctive relief is appropriate on behalf of Plaintiff and members of the class because Defendant continues to omit material facts about the Products. Injunctive relief is necessary to prevent Defendant from continuing to engage in the unfair, fraudulent, and/or unlawful conduct described herein and to prevent future harm—none of which can be achieved through available legal remedies (such as monetary damages to compensate past harm). Injunctive relief, in the form of affirmative disclosures is necessary to dispel the public misperception about the Products that has resulted from years of Defendant's unfair, fraudulent, and unlawful marketing efforts. Such disclosures would include, but are not limited to, publicly disseminated statements that the Products' labeling misrepresentations are untrue and providing accurate

information about the Products' true nature; and/or requiring prominent disclaimers on the Products' front labels concerning the Products' true nature. An injunction requiring affirmative disclosures to dispel the public's misperception, and prevent the ongoing deception, is also not available through a legal remedy (such as monetary damages). In addition, Plaintiff is currently unable to accurately quantify the damages caused by Defendant's future harm, because discovery and Plaintiff's investigation have not yet completed, rendering injunctive relief necessary. Further, because a public injunction is available under the UCL, damages will not adequately benefit the general public in a manner equivalent to an injunction.

42. Moreover, a legal remedy is not adequate if it is not as certain as an equitable remedy. Here, Plaintiff may lack an adequate remedy at law if, for instance, damages resulting from her purchases of the Products are determined to be an amount less than the premium price of the Products. Without compensation for the full premium price of the Products, Plaintiff and class members would be left without the parity in purchasing power to which they are entitled.

43. It is premature to determine whether an adequate remedy at law exists. This is an initial pleading and discovery has not yet commenced and/or is at its initial stages. No class has been certified yet. No expert discovery has commenced and/or completed. The completion of fact/non-expert and expert discovery, as well as the certification of this case as a class action, are necessary to finalize and determine the adequacy and availability of all remedies, including legal and equitable, for Plaintiff's individual claims and any certified class. Plaintiff therefore reserves her right to amend this complaint and/or assert additional facts that demonstrate this Court's jurisdiction to order equitable remedies where no adequate legal remedies are available for either Plaintiff and/or any certified class. Such proof, to the extent necessary, will be presented prior to the trial of any equitable claims for relief and/or the entry of an order granting equitable relief.

## V. CLASS ACTION ALLEGATIONS

44. Pursuant to California Code of Civil Procedure section 382, and Fed. R. Civ. P. 23, Plaintiff seeks certification of the following Class: *All persons in California who purchased the Products in California for personal and household use and not for resale within the applicable statute of limitations and until the date class notice is disseminated.*

45. Plaintiff and the Class reserve their right to amend or modify the Class definitions with greater specificity or further division into subclasses or limitation to particular issues as discovery and the orders of this Court warrant.

46. Excluded from the Class are governmental entities, Defendant, any entity in which Defendant has a controlling interest, Defendant's employees, officers, directors, legal representatives, heirs, successors and wholly or partly owned subsidiaries or affiliated companies, including all parent companies, and their employees; and the judicial officers, their immediate family members and court staff assigned to this case.

47. The members in the proposed Class are so numerous that individual joinder of all members is impracticable. Due to the nature of the trade and commerce involved, however, Plaintiff believes the total number of Class members is at least in the hundreds. The exact number and identities of the Class members are unknown at this time, such information can be ascertained through appropriate investigation and discovery. The disposition of the claims of the Class members in a single class action will provide substantial benefits to all parties and to the Court.

48. Pursuant to Rule 23(b)(2), Defendant has acted or refused to act on grounds generally applicable to the Class. thereby making final injunctive relief or corresponding declaratory relief and damages as to the Products appropriate with respect to the Class as a whole. In particular, Defendant has failed to disclose the true nature of the Products being marketed as described herein.

49. There is a well-defined community of interest in the questions of law and fact

involved, affecting the Plaintiff and the Class and these common questions of fact and law include, but are not limited to, the following: Whether Defendant violated consumer protection statutes, false advertising statutes, or state deceptive business practices statutes; Whether Defendant engaged, and continues to engage, in unfair or deceptive acts and practices in connection with the marketing, advertising, and sales of the Products; Whether reasonable consumers are likely to be misled by Defendant's advertising and labeling of the Products; Whether the Products' challenged representations are material representations made to reasonable consumers; Whether the proposed class is suitable for class certification; The proper amount of restitution and damages; The proper injunctive relief, including a corrective advertising campaign; The proper amount of attorneys' fees.

50. These common questions of law and fact predominate over questions that affect only individual Class Members.

51. Plaintiff's claims are typical of Class Members' claims because they are based on the same underlying facts, events, and circumstances relating to Defendant's conduct. Specifically, all Class Members, including Plaintiff, were subjected to the same misleading and deceptive conduct when they purchased the Products, and suffered economic injury because the Products were and still are misrepresented. Absent Defendant's business practice of deceptively and unlawfully labeling the Products, Plaintiff and Class Members would not have purchased the Products, or would have paid less for them.

52. Plaintiff will fairly and adequately represent and protect the interests of the Class, has no interests incompatible with the interests of the Class, and has retained counsel with substantial experience in handling complex consumer class action litigation. Plaintiff and her counsel are committed to vigorously prosecuting this action on behalf of the Class and have the financial resources to do so.

53. Plaintiff and the members of the Class suffered, and will continue to suffer harm as a result of Defendant's unlawful and wrongful conduct. A class action is superior to other available methods for the fair and efficient adjudication of the present controversy. Individual joinder of all members of the Class is impracticable. Even if individual Class members had the resources to pursue individual litigation, it would be unduly burdensome to the courts in which the individual litigation would proceed. Individual litigation magnifies the delay and expense to all parties in the court system of resolving the controversies engendered by Defendant's common course of conduct. The class action device allows a single court to provide the benefits of unitary adjudication, judicial economy, and the fair and efficient handling of all Class members' claims in a single forum. The conduct of this action as a class action conserves the resources of the parties and of the judicial system and protects the rights of the Class members. Furthermore, for many, if not most, a class action is the only feasible mechanism that allows an opportunity for legal redress and justice.

54. Adjudication of individual Class members' claims with respect to Defendant would, as a practical matter, be dispositive of the interests of other members not parties to the adjudication, and could substantially impair or impede the ability of other class members to protect their interests.

55. Defendant has acted on grounds applicable to the Class, thereby making appropriate final public injunctive and declaratory relief concerning the Class as a whole.

56. As a result of the foregoing, class treatment is appropriate.

## VI. CAUSES OF ACTION

### FIRST CAUSE OF ACTION

### Violations of the Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 et seq.

57. Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if

set forth in full herein.

58. California's Unfair Competition Law, Business and Professions Code §17200 (the UCL") prohibits any "unfair, deceptive, untrue or misleading advertising." For the reasons discussed above, Defendant has engaged in unfair, deceptive, untrue and misleading advertising, and continues to engage in such business conduct, in violation of the UCL.

59. California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, et seq., proscribes acts of unfair competition, including "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising."

60. A statement or practice is "fraudulent" under the UCL if it is likely to mislead or deceive the public, applying an objective reasonable consumer test.

61. As set forth herein, Defendant's claims relating to the Products are likely to mislead reasonable consumers to believe that each chewable tablet, gummy, or effervescent tablet unit in the Products contained the dosage amount advertised on the Products' front labels.

62. Defendant's conduct caused and continues to cause substantial injury to Plaintiff and the Class. Plaintiff has suffered injury in fact as a result of Defendant's unfair conduct. Defendant has thus engaged in unlawful, unfair and fraudulent business acts and practices and false advertising, entitling Plaintiff and the Class to public injunctive relief against Defendant, as set forth in the Prayer for Relief.

63. Pursuant to Business and Professions Code § 17203, Plaintiff and the Class seek an order requiring Defendant to immediately cease such acts of unlawful, unfair and fraudulent business practices and requiring Defendant to engage in a corrective advertising campaign.

64. Plaintiff also seeks an order for the disgorgement and restitution of the premium received from the sale of the Products the Class Members purchased, which was unjustly acquired through acts of unlawful, unfair, and/or fraudulent competition, and attorneys' fees and costs.

65. The acts alleged herein are ‘‘unlawful” under the UCL in that they violate at least the following laws: By knowingly and intentionally concealing from Plaintiff and the other Class members that each unit of the Products did not contain the advertised dosage; By misrepresenting the dosage of the Products on the front label; By engaging in the conduct giving rise to the claims asserted in this complaint; By violating California Civil Code §§ 1709-1711 by making affirmative misrepresentations about the Products; By violating California Civil Code §§ 1709-1711 by suppressing material information about the Products; By violating the California Commercial Code for breaches of express and implied warranties; By violating California's Sherman Act, Cal. Health & Safety Code § 110390, which prohibits drug and cosmetics labelling that is "false or misleading in any particular"; by violating the False Advertising Law, Cal. Bus. & Prof. Code §§ 17500 et seq.; by violating the Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750 et seq.

66. Such conduct is ongoing and continues to this date.

67. Plaintiff and the Class reserve the right to allege other violations of law, which constitute other unlawful business acts or practices.

68. Defendant's acts, omissions, misrepresentations, practices and nondisclosures as alleged herein also constitute "unfair" business acts and practices within the meaning of the UCL in that its conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous as the gravity of the conduct outweighs any alleged benefits attributable to such conduct. In the alternative, Defendant's business conduct as described herein violates relevant laws designed to protect consumers and businesses from unfair competition in the marketplace. Such conduct is ongoing and continues to date.

69. Defendant's conduct with respect to the labeling, advertising, and sale of the Products was and is also unfair because it violates public policy as declared by specific

constitutional, statutory or regulatory provisions, including but not limited to the Consumers Legal Remedies Act, the False Advertising Law, and portions of the California Sherman Food, Drug, and Cosmetic Law.

70. Defendant's conduct with respect to the labeling, advertising, and sale of the Products was and is also unfair because the consumer injury was substantial, not outweighed by benefits to consumers or competition, and not one consumers themselves could reasonably have avoided.

71. Defendant profited from its sale of the falsely, deceptively, and unlawfully advertised and packaged Products to unwary consumers.

72. Plaintiff and the Class are likely to continue to be damaged by Defendant's deceptive trade practices, because Defendant continues to disseminate misleading information on the Products' packaging. Thus, public injunctive relief enjoining Defendant's deceptive practices is proper.

73. There were reasonably available alternatives to further Defendant's legitimate business interests, other than the conduct described herein.

74. Class wide reliance can be inferred because Defendant's misrepresentations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy the Products.

75. Defendant's misrepresentations were a substantial factor and proximate cause in causing damages and losses to Plaintiff and Class members.

76. Plaintiff and the Classes were injured as a direct and proximate result of Defendant's conduct because (a) they would not have purchased the Products if they had known the truth and (b) they overpaid for the Products because the Products are sold at a price premium due to the misrepresentations.

**SECOND CAUSE OF ACTION**

**Violations of the False Advertising Law, Cal. Bus. & Prof. Code §§ 17500 et seq.**

77. Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if set forth herein.

78. The FAL provides that "[i]t is unlawful for any person, firm, corporation or association, or any employee thereof with intent directly or indirectly to dispose of real or personal property or to perform services" to disseminate any statement "which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading" Cal. Bus. & Prof. Code § 17500.

79. It is also unlawful under the FAL to disseminate statements concerning property or services that are "untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." Id.

80. As alleged herein, Defendant falsely advertised the Products by falsely representing that each unit of the Products contained the advertised dosage, when in fact, a consumer would need to take two or more units to achieve the advertised dosage.

81. Plaintiff has standing to pursue this claim as Plaintiff has suffered injury in fact as a result of Defendant's actions as set forth herein. Specifically, prior to the filing of this action, Plaintiff purchased the Products in reliance on Defendant's false and misleading labeling claims that each unit of the Products contained the advertised dosage.

82. Defendant's business practices as alleged herein constitute deceptive, untrue, and misleading advertising pursuant to the FAL because Defendant has advertised the Products in a manner that is untrue and misleading, which Defendant knew or reasonably should have known, and omitted material information from its advertising.

83. Defendant profited from its sale of the falsely and deceptively advertised Products to

unwary consumers.

84. As a result, Plaintiff, the Class, and the general public are entitled to public injunctive and equitable relief, restitution, and an order for the disgorgement of the funds by which Defendant was unjustly enriched.

85. Pursuant to Cal. Bus. & Prof. Code § 17535, Plaintiff, on behalf of herself and the Class, seeks an order enjoining Defendant from continuing to engage in deceptive business practices, false advertising, and any other act prohibited by law, including those set forth herein.

**THIRD CAUSE OF ACTION**

**Violations of the Consumer Legal Remedies Act, Cal. Civ. Code §§ 1750 et seq.**

86. Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if set forth in full herein.

87. The CLRA prohibits deceptive practices in connection with the conduct of a business that provides goods, property, or services primarily for personal, family, or household purposes. The Products are goods pursuant to the CLRA.

88. Defendant's false and misleading labeling and other policies, acts, and practices were designed to, and did, induce the purchase and use of the Products for personal, family, or household purposes by Plaintiff and Class Members, and violated and continue to violate the following sections of the CLRA: § 1770(a)(5), representing that goods have characteristics, ingredients, uses, benefits, or quantities which they do not have; § 1770(a)(7), representing that goods are of a particular standard, quality, or grade if they are of another; § 1770(a)(9), advertising goods with intent not to sell them as advertised; and § 1770(a)(16), representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not.

89. Defendant profited from the sale of the falsely, deceptively, and unlawfully

advertised Products to unwary consumers.

90. Defendant's wrongful business practices constituted, and constitute, a continuing course of conduct in violation of the CLRA.

91. Pursuant to California Civil Code section 1782(d), Plaintiff and the members of the Class seek an order enjoining Defendant from engaging in the methods, acts, and practices alleged herein.

92. On or about April 30, 2026, prior to the filing of this First Amended Class Action Complaint, Plaintiff, individually and on behalf of the proposed Class, served on Defendant at its principal place of business, via Certified Mail, return receipt requested, a notice and demand letter that complies with California Civil Code § 1782(a), a true and correct copy of which is attached hereto as Exhibit A, demanding that Defendant (1) correct, repair, replace, or otherwise rectify the unlawful, unfair, fraudulent, and deceptive acts and practices described herein, and (2) give notice to all affected consumers of its intent to so act..

93. More than thirty (30) days have elapsed since Defendant's receipt of the § 1782(a) notice, and Defendant has failed to provide an appropriate correction, repair, replacement, or other remedy. Accordingly, pursuant to California Civil Code § 1782(d), and without leave of Court, Plaintiff, individually and on behalf of the Class, amends her Complaint to assert, and hereby asserts, claims under the CLRA for actual damages, restitution, and reasonable attorneys' fees and costs, together with the injunctive relief demanded above and any other relief authorized under Civil Code section 1780.

94. Based on information and belief, Defendant's wrongful conduct described herein is ongoing and continues to this date.

## VII. <u>PRAYER FOR RELIEF</u>

95. Wherefore, Plaintiff, on behalf of herself, all others similarly situated, and the

general public, prays for judgment against Defendant as follows:

a. For an order certifying this action as a class action, appointing Plaintiff as the Class Representative, and appointing Plaintiff's Counsel as Class Counsel;

b. For an order declaring that Defendant's conduct violates the statutes and laws referenced herein, consistent with applicable law and pursuant to only those causes of action so permitted;

c. For an order awarding monetary compensation in the form of damages, restitution, and/or disgorgement to Plaintiff and the Class, consistent with permissible law and pursuant to only those causes of action so permitted;

d. For injunctive relief;

e. For an order awarding statutory penalties, and/or monetary fines, consistent with permissible law and pursuant to only those causes of action so permitted;

f. For an order awarding attorneys' fees and costs, consistent with permissible law and pursuant to only those causes of action so permitted;

g. For an order awarding pre-judgment and post-judgment interest, consistent with permissible law and pursuant to only those causes of action so permitted; and

h. For such other and further relief as the Court deems just and proper.

**JURY DEMAND**

96. Plaintiff hereby demands a trial by jury on all issues so triable.

///

///

///

Dated: July 15, 2026

**LAW OFFICE OF DAVID BALDWIN**

By: /David A. Baldwin/
David A. Baldwin

Attorneys for Plaintiff
and the Proposed Class

Dated: July 15, 2026

**LAW OFFICE OF LEVI M. PLESSET**

By: /Levi M. Plesset/
Levi M. Plesset

Attorneys for Plaintiff
and the Proposed Class