SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
A Limited Liability Partnership
Including Professional Corporations
SASCHA HENRY, Cal Bar No. 191914
shenry@sheppardmullin.com
KHIRIN A. BUNKER, Cal Bar No. 329314
kbunker@sheppardmullin.com
350 S. Grand Ave., 40th Floor
Los Angeles, California 90071-3460
Telephone: 213.620.1780
Facsimile: 213.620.1398

PAUL W. GARRITY, *Pro Hac Vice Forthcoming*
pgarrity@sheppardmullin.com
30 Rockefeller Plaza
New York, New York 10112-0015
Telephone: 212.653.8700
Facsimile: 212.653.8701

Attorneys for Defendant RB HEALTH (US) LLC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

YALINDA ROBINSON, individually and on behalf of all others similarly situated,

Plaintiff,

v.

RB HEALTH (US) LLC, a Delaware limited liability company; and DOES 1 through 50, inclusive,

Defendants.

Case No. 2:26-cv-04765-AS

**(1) DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT; AND**

**(2) MEMORANDUM OF POINTS AND AUTHORITIES**

Date: October 8, 2026
Time: 10:00 a.m.
Crtrm: 540
Judge: Hon. Alka Sagar

**TO PLAINTIFF AND HER ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on October 8, 2026 at 10:00 a.m. or as soon thereafter as counsel may be heard in the courtroom of the Honorable Alka Sagar, located in Courtroom 540 on the Fifth Floor of the Edward R. Roybal Federal Building and United States Courthouse, 255 East Temple Street, Los Angeles, California, 90012, Defendant RB Health (US) LLC[1] ("Defendant") will move and hereby does move this Court for an order pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) dismissing the claims asserted by Plaintiff Yalinda Robinson ("Plaintiff") in her amended complaint against Defendant (ECF No. 18) ("Amended Complaint").

Plaintiff asserts the following three purported claims individually and on behalf of a putative California class:

Count 1: Violation of the Unfair Competition Law, CALIFORNIA BUSINESS & PROFESSIONS CODE § 17200, *et seq.* ("UCL");

Count 2: Violation of the False Advertising Law, CALIFORNIA BUSINESS & PROFESSIONS CODE § 17500, *et seq.* ("FAL"); and

Count 3: Violation of the Consumers Legal Remedies Act, CALIFORNIA CIVIL CODE § 1750, *et seq.* ("CLRA").

**Motion to Dismiss**

Defendant moves to dismiss each of these claims on the following grounds:

1. Plaintiff's UCL, FAL, and CLRA claims (Counts 1-3) should be dismissed because, when read in the context of supplement products and the product's packaging, no reasonable consumer would be misled by the statements in the way Plaintiff alleges. *Ebner v. Fresh, Inc.* 838 F.3d 958, 965 (9th Cir. 2016); *Moore v. Trader Joe's Co.*, 4 F.4th 874, 882 (9th Cir. 2021); *McGinity v. The Procter & Gamble Co.*, 69 F.4th 1093, 1099 (9th Cir. 2023). A reasonable

[1] Plaintiff has erroneously named RB Health (US) LLC as the defendant in the litigation. The correct party in interest is Reckitt Benckiser LLC.

consumer would not construe the independent statements "Vitamin C 1,000 mg" and the net count disclosure of "64 Chewable Tablets" on the front panel to be a representation regarding the product's dosing instructions.

2. To the extent Plaintiff's UCL "unlawful" prong claim (Count 1) is premised on her CLRA and FAL claims, it fails for the same reasons. To the extent it is separately premised on alleged violations of various other California statutes, her claim must also be dismissed because she fails to address the elements of these individual statutes or allege sufficient supporting facts to support the elements of the predicate violations.

3. To the extent Plaintiff attempts to pursue any claims relating to five products that she did not purchase (All Counts), she lacks Article III standing and has not plausibly alleged that these products are "substantially similar" to the "AIRBORNE Immune Support" very berry chewable tablet supplement that she allegedly purchased.

4. To the extent Plaintiff purports to seek injunctive relief in connection with any of her claims (All Counts), she lacks Article III standing because she has not plausibly alleged any realistic likelihood that her asserted economic injury will be repeated and there is no risk of continued harm.

The motion is based on this Notice, the accompanying Memorandum of Points and Authorities, the Request for Judicial Notice and Exhibit 1 thereto, Declaration of Fan Bonnett, Declaration of Khirin A. Bunker, all pleadings, papers and other documentary materials in the Court's file for this action, those matters of which this Court may or must take judicial notice, and such other matters as this Court may consider in connection with the hearing on this matter.

This motion is made following the conference of counsel pursuant to C.D. Cal. Local Rule 7-3 that took place on August 6, 2026. *See* Declaration of Khirin A. Bunker, ¶ 2.

Dated: August 14, 2026

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By *∕s∕ Khirin A. Bunker*

SASCHA HENRY
KHIRIN A. BUNKER
PAUL W. GARRITY

Attorneys for Defendant
RB HEALTH (US) LLC

# TABLE OF CONTENTS


**Page**

I. INTRODUCTION .................... 9

II. SUMMARY OF PLAINTIFF'S ALLEGATIONS .................... 10

A. The Product's Package Discloses The Proper Dosing, But Plaintiff Alleges That She Was Misled. .................... 10

B. Plaintiff Purports To Bring Claims Against Five Different Products That She Did Not Purchase. .................... 13

III. LEGAL STANDARD .................... 14

IV. ARGUMENT .................... 15

A. No Reasonable Consumer Would Share In Plaintiff's Alleged Interpretation of The Product's Packaging .................... 15

1. A Reasonable Consumer Would Not Construe The List of Nutrients and Separate Net Quantity Disclosure To Be A Representation Regarding The Product's Dosing. .................... 16

2. Context Provided By The Rest Of The Product's Packaging (Omitted From Plaintiff's Amended Complaint) Further Confirms That The Recommended Dose Is "Four Tablets". .................... 18

B. Plaintiff Has Not Plausibly Alleged Any Predicate Violations To Support A Claim Under The UCL's Unlawful Prong. .................... 21

C. Plaintiff Lacks Standing To Bring Claims Related To The Unpurchased Products. .................... 23

D. Plaintiff Lacks Standing To Pursue Injunctive Relief .................... 25

V. CONCLUSION .................... 26

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adams v. Johnson*
355 F.3d 1179 (9th Cir. 2004) .......... 14

*Ashcroft v. Iqbal*
556 U.S. 662 (2009) .......... 14, 25

*Bell Atl. Corp. v. Twombly*
550 U.S. 544 (2007) .......... 21

*Birdsong v. Apple, Inc.*
590 F.3d 955 (9th Cir. 2009) .......... 21

*Bodenburg v. Apple Inc.*
146 F.4th 761 (9th Cir. 2025) .......... 15

*Brady v. Bayer Corp.*
26 Cal. App. 5th 1156 (2018) .......... 20

*Brown v. Brita Prods. Co.*
172 F.4th 1113 (9th Cir. 2026) .......... 16

*Bryan v. Del Monte Foods, Inc.*
No. 23-3685, 2024 U.S. App. LEXIS 29809 (9th Cir. Nov. 22, 2024) .......... 18, 20

*Chapman v. Pier 1 Impos. Inc.*
631 F.3d 939 (9th Cir. 2011) .......... 25

*Clemens v. DaimlerChrysler Corp.*
534 F.3d 1017 (9th Cir. 2008) .......... 23

*Cordes v. Boulder Brands USA, Inc.*
No. CV 18-6534 PSG, 2018 U.S. Dist. LEXIS 217534 (C.D. Cal. Oct. 17, 2018) .......... 26

*Davidson v. Kimberly-Clark Corp.*
889 F.3d 956 (9th Cir. 2018) .......... 25

*Ebner v. Fresh, Inc.*
838 F.3d 958 (9th Cir. 2016) .......... 15, 16, 17

*Eclectic Properties E., LLC v. Marcus & Millichap Co.*
751 F.3d 990 (9th Cir. 2014) .......... 14

*Freeman v. Time, Inc.*
68 F.3d 285 (9th Cir. 1995) .......... 15

*Gamez v. Summit Naturals Inc.*
No. CV 22-05894 DSF, 2022 U.S. Dist. LEXIS 231911 (C.D. Cal. Oct. 24, 2022) .......... 24, 25

*Gest v. Bradbury*
443 F.3d 1177 (9th Cir. 2006) .......... 25

*Kenney v. Fruit of the Earth, Inc.*
No. 23-55583, 2024 U.S. App. LEXIS 27083 (9th Cir. Oct. 25, 2024) .......... 25

*McGinity v. The Procter & Gamble Co.*
69 F.4th 1093 (9th Cir. 2023) .......... 18, 19, 20

*McVay v. Kroger Co.*
No. 2:25-cv-06176-SVW-RAO, 2026 U.S. Dist. LEXIS 23559 (C.D. Cal. Feb. 3, 2026) .......... 24, 26

*Moore v. Trader Joe's Co.*
4 F.4th 874 (9th Cir. 2021) .......... 15, 16, 17

*Oh v. Fresh Bellies, Inc.*
No. CV 24-5417 PSG, 2024 U.S. Dist. LEXIS 189574 (C.D. Cal. Oct. 15, 2024) .......... 23, 24

*Rubenstein v. The Gap, Inc.*
14 Cal. App. 5th 870 (2017) .......... 21

*Shaeffer v. Califia Farms, LLC*
44 Cal. App. 5th 1125 (2020) .......... 15, 16, 23

*Tailford v. Experian Info. Sols., Inc.*
26 F.4th 1092 (9th Cir. 2022) .......... 14

*TransUnion LLC v. Ramirez*
594 U.S. 413 (2021) .......... 14

*Whiteside v. Kimberly Clark Corp.*
108 F.4th 771 (9th Cir. 2024) .......... 15, 18

*Wilson v. Hewlett-Packard Co.*
668 F.3d 1136 (9th Cir. 2012) .................................................................21, 22

*Wong v. Iovate Health Scis. U.S.A. Inc.*
No. 2:24-cv-00901-DAD-CKD, 2025 U.S. Dist. LEXIS 47232 (E.D. Cal. Mar. 14, 2025) ........................................................................................23

**Statutes & Regulations**

Cal. Civ. Code § 1709 .................................................................21, 22

Cal. Civ. Code § 1710 .................................................................21, 22

Cal. Civ. Code § 1711 .................................................................21, 22

Cal. Com. Code § 2313 .................................................................22

Cal. Com. Code § 2314(2)(f) .................................................................22

Cal. Health & Safety Code § 110100 .................................................................17

Cal. Health & Safety Code § 110390 .................................................................21, 23

21 C.F.R. § 101.7(a) .................................................................12, 17

21 C.F.R. § 101.36 .................................................................10, 12

## I. INTRODUCTION

It is common sense that a reasonable consumer does not guess at the proper dosing of over-the-counter vitamin supplements. No one walks into a store, picks a supplement off the shelf, and blindly ingests it in whatever amount. To the contrary, a reasonable consumer does what any prudent person would do – they read the recommended dosage on the package to ensure safe use. This is not extraordinary diligence; it is the most basic exercise of ordinary care. And every dietary supplement sold in the United States bears explicit serving sizes and directions for use on its packaging, as mandated by the Food and Drug Administration's ("FDA") regulations. The information is there, plainly stated, precisely because consumers are expected to read and follow it.

Defendant's "AIRBORNE Immune Support" very berry chewable tablet supplement (the "Product") complies with the FDA's regulations and expressly states that the Product's recommended dosage is "Four Tablets" for adults.[2] Plaintiff does not dispute this. Rather, Plaintiff alleges that she read two individual statements – "Vitamin C 1,000 mg" and "64 Chewable Tablets" – on the Product's front panel and *interpreted* them to mean that the proper dosage was a single tablet.

Plaintiff's alleged interpretation is unreasonable, especially when considered in the context of supplement products. The statements "Vitamin C 1,000 mg" and "64 Chewable Tablets" do not appear in close proximity. Instead, the package states that the Product provides "7 Key Nutrients for Immune Support" including "Vitamin C 1000 mg + Vitamin D + Vitamin A + E + Selenium + Manganese". It also includes a separate statement of the net quantity (64 Chewable Tablets), as required by law, in the bottom right corner. These are entirely truthful and distinct

[2] Plaintiff's Amended Complaint does not include a complete copy of the Product's actual packaging. *See* Amended Compl. ¶ 13. Accordingly, Defendant has filed a Request for Judicial Notice ("RJN") herewith asking that the Court take judicial notice of the full package as it appears to consumers. *See* RJN, Ex. 1.

statements and no reasonable consumer would construe them as dosing instructions.

Plaintiff's alleged reading is further contradicted by the full package, which states in *three separate places* – including the universal, FDA-mandated Supplement Facts (21 C.F.R. § 101.36), the product's "DIRECTIONS", and in a large black banner in all capital letters – that the Product's dosage is "Four Tablets" for adults. The Product's package also depicts the dosing of four tablets on yet another panel. In light of this information, no consumer acting reasonably could be misled by the Product's packaging in the way Plaintiff alleges. Plaintiff's strained reading – which is inconsistent with all of the express dosing instructions on the box – is insufficient to state a claim under the UCL, FAL, or CLRA. The Amended Complaint should be dismissed with prejudice on these grounds alone.

Plaintiff's Amended Complaint also suffers from three additional defects. First, Plaintiff purports to bring claims under the UCL's unlawful prong premised on various other California statutes, but she fails to even identify the elements of these purported predicate violations let alone satisfy them. Second, Plaintiff attempts to bring claims against five other products that she did not purchase alleging that they are "similar" to the Product, but Plaintiff lacks Article III standing to pursue any claims relating to these unpurchased products because she has not suffered any cognizable injury traceable to these products that she never bought. Third, Plaintiff seeks the remedy of injunctive relief, but she lacks Article III standing to do so because it is not plausible that she will suffer any future harm as she now knows to read the package to understand the dosing instructions.

For these reasons, and as further set forth below, the Court should dismiss the Amended Complaint with prejudice.

## II. SUMMARY OF PLAINTIFF'S ALLEGATIONS

### A. The Product's Package Discloses The Proper Dosing, But Plaintiff Alleges That She Was Misled.

Plaintiff alleges that she purchased the Product at a retail store in December

2025. Amended Compl. ¶¶ 11, 23. Plaintiff includes an image of the front label of the bottle that she allegedly purchased (depicted below at left). *Id.* ¶ 13. She also includes an image of the side panel of the Product's outer packaging, which shows the Directions and FDA-mandated Supplement Facts (depicted below at right).






DIRECTIONS: Adults and children 14 years of age and older: Chew four (4) tablets daily. Children 4 years of age and older: Chew two (2) tablets daily. Not for younger children.

**Supplement Facts**

Serving Size 2 tablets (4 years of age and older)/4 tablets (14 years of age and older)
Servings Per Container 32 (2 tablets)/16 (4 tablets)

| | 4 years of age and older (2 tablets) | | 14 years of age and older (4 tablets) | |
|---|---|---|---|---|
| | Amount/Serving | %DV | Amount/Serving | %DV |
| Calories | 5 | | 15 | |
| Total Carbohydrate | 2 g | 1%* | 3 g | 1%* |
| Total Sugars | 2 g | † | 3 g | † |
| Includes Added Sugars | 2 g | 4%* | 3 g | 6%* |
| Vitamin A (as retinyl acetate) | 90 mcg | 10% | 180 mcg | 20% |
| Vitamin C (as ascorbic acid and sodium ascorbate) | 500 mg | 556% | 1000 mg | 1111% |
| Vitamin D (as cholecalciferol) | 19 mcg | 95% | 38 mcg | 190% |
| Vitamin E (as dl-alpha tocopheryl acetate) | 1.5 mg | 10% | 3 mg | 20% |
| Zinc (as zinc sulfate) | 5.5 mg | 50% | 11 mg | 100% |
| Selenium (as selenium amino acid chelate) | 5.5 mcg | 10% | 11 mcg | 20% |
| Manganese (as manganese gluconate) | 0.23 mg | 10% | 0.46 mg | 20% |
| Sodium | 20 mg | 1% | 40 mg | 2% |
| Proprietary Herbal Blend *Lonicera japonica* (flower), *Forsythia suspensa* (fruit), *Schizonepeta tenuifolia* (aerial), Ginger (*Zingiber officinale* [root]), *Vitex trifolia* (fruit), *Isatis tinctoria* (root), *Echinacea purpurea* (aerial) | 17.75 mg | † | 35.5 mg | † |

*Percent Daily Values are based on a 2,000 calorie diet.
†Daily Value not established.

Other Ingredients: dextrose, beet juice color, magnesium stearate, sucralose, natural flavor, microcrystalline cellulose, silicon dioxide

*See id.* ¶ 13. Although the Amended Complaint depicts a bottle, the Product is not sold on store shelves in a bottle. Rather, the bottle is sold within an outer package (the front of which is depicted at left and enhanced at right below).







*See generally* RJN Ex. 1. The front of the Product's outer packaging states that it

provides "7 Key Nutrients for Immune Support" including "Vitamin C 1000 mg + Vitamin D + Vitamin A + E + Selenium + Manganese". *See* RJN Ex. 1 at p. 1. Consistent with FDA regulations, the panel also includes a "net quantity" declaration in the lower right-hand corner stating that there are "64 Chewable Tablets" in the Product. 21 C.F.R. § 101.7(a).

Plaintiff does not allege that the Product failed to provide her with each of the "7 Key Nutrients" or that there were not 64 tablets contained in the Product that she purchased. Instead, Plaintiff alleges that she understood the net quantity disclosure to be a representation and warranty that "each chewable tablet" of the Product contained "1,000 mg of Vitamin C" but that the Product did not meet this expectation, causing her to overpay for it. *See* Amended Compl. ¶ 11.

Plaintiff's Amended Complaint does not include full and complete images of the Product's outer packaging. As depicted below, consistent with FDA regulations, the Product's packaging includes the Supplement Facts panel setting forth the proper dosing. 21 C.F.R. § 101.36.









SMRH:4905-2249-8501

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT

*See* RJN, Ex. 1 at p. 3. For consumers "14 years of age and older", the Supplement Facts panel states that the proper serving size is "4 tablets". *Id.* The Product also includes "**DIRECTIONS**" for use above the Supplement Facts panel, instructing "Adults and children 14 years of age and older" to "Chew four (4) tablets daily". *Id.*

On the Product's reverse panel is a large black banner which again states "4 CHEWABLE TABLETS = 7 IMMUNE SUPPORTING INGREDIENTS*" (below at left). *Id.* at p. 4. The fourth panel (at right) also depicts the dose of four tablets. *Id.* at p. 5.







### B. Plaintiff Purports To Bring Claims Against Five Different Products That She Did Not Purchase.

Although Plaintiff only alleges that she purchased the AIRBORNE "Very Berry Chewable Tablets", she purports to bring claims against a different chewable

tablet product and four other entirely distinct products that she did not purchase that she alleges are also sold by Defendant. These unpurchased products are identified as "Zesty Orange Chewable Tablets", "Airborne Immune Support Gummies", "Airborne Vitamin C + Zinc Gummies", "Airborne Elderberry + Zinc + Vitamin C Gummies", and "Airborne Triple Action Immune Support Effervescent Tablets" (together, the "Unpurchased Products"). Amended Compl. ¶ 12. Plaintiff's Amended Complaint does not include any images of these Unpurchased Products.

## III. LEGAL STANDARD

To avoid dismissal pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While the Court "should assume the veracity of well pleaded factual allegations," allegations that "are no more than conclusions" are "not entitled to the assumption of truth." *Eclectic Properties E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 996 (9th Cir. 2014) (citations omitted); *see also Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004) ("[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss.").

Pursuant to Rule 12(b)(1), a party may challenge a claim for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). It is well-established that Article III "[s]tanding is a constitutional requirement for the exercise of subject matter jurisdiction over disputes in federal court." *Tailford v. Experian Info. Sols., Inc.*, 26 F.4th 1092, 1099 (9th Cir. 2022). "[P]laintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek (for example, injunctive relief and damages)." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 430-31 (2021).

# IV. ARGUMENT

## A. No Reasonable Consumer Would Share In Plaintiff's Alleged Interpretation of The Product's Packaging.

Plaintiff's claims under the CLRA, FAL, and the unfair and fraudulent prongs of the UCL, are governed by the reasonable consumer test. *Bodenburg v. Apple Inc.*, 146 F.4th 761, 769 (9th Cir. 2025). Under this standard, a plaintiff must "show that 'members of the public are likely to be deceived'" by the defendant's allegedly deceptive business practice. *Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995) (citation omitted); *Shaeffer v. Califia Farms, LLC*, 44 Cal. App. 5th 1125, 1137 (2020) ("only those statements on a label that are 'likely to deceive' a 'reasonable consumer' are actionable").

At the pleadings stage, "[t]his requires more than a mere possibility that [a] label 'might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner.'" *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016) (quoting *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 508 (2003)). Rather, a plaintiff must plausibly allege "that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Bodenburg*, 146 F.4th at 769 (citation omitted). Thus, to survive dismissal, a challenged statement must be "unambiguously deceptive to an ordinary consumer." *Bodenburg*, 146 F.4th at 769; *Whiteside v. Kimberly Clark Corp.*, 108 F.4th 771, 778 (9th Cir. 2024).

The reasonable consumer analysis requires that an allegedly deceptive statement be "read reasonably and in context." *Freeman*, 68 F.3d at 290. Accordingly, in evaluating claims, courts "take into account all the information available to consumers and the context in which that information is provided and used." *Moore v. Trader Joe's Co.*, 4 F.4th 874, 882 (9th Cir. 2021).

Here, as further set forth below, a reasonable consumer would not be misled by the challenged statements on the Product in the way that Plaintiff asserts.

**1. <u>A Reasonable Consumer Would Not Construe The List of Nutrients and Separate Net Quantity Disclosure To Be A Representation Regarding The Product's Dosing</u>.**

Dismissal of false advertising claims on the pleadings is proper "where plaintiffs base deceptive advertising claims on unreasonable or fanciful interpretations of labels or other advertising." *Moore*, 4 F.4th 874 at 882-83; *see also Brown v. Brita Prods. Co.,* 172 F.4th 1113, 1119 (9th Cir. 2026) (affirming dismissal of CLRA, FAL, and UCL claims where no reasonable consumer would share in the plaintiff's belief that the defendant's filters could remove "*all* contaminants . . . particularly in light of [the defendant's] extensive disclosures to the contrary"); *Shaeffer,* 44 Cal. App. 5th at 1139 (affirming demurrer where "a reasonable consumer is unlikely to make the series of inferential leaps" required by the plaintiff's reading of the label); *Ebner*, 838 F.3d at 965.

For example, in *Ebner*, the Ninth Circuit affirmed the dismissal of CLRA, FAL, and UCL claims where the plaintiff alleged that she was misled by the net weight disclosure on the packaging of lip balm products because the dispenser could not dispense all of the product. 838 F.3d at 965. Applying the reasonable consumer standard, the Court found there was no deception where it was "undisputed that the [product's] label discloses the correct weight of included lip product." *Id*. at 965 "Apart from the accurate weight label, there are no other words, pictures, or diagrams adorning the packaging, as there were in *Williams*, from which *any* inference could be drawn or on which *any* reasonable belief could be based about how much of the total lip product can be accessed by using the screw mechanism." *Id.* at 966 (emphasis original). The Court explained that "even if 'some consumers might hazard such an assumption,' the [product's] tube is not false and deceptive merely because the remaining product quantity may be 'unreasonably misunderstood by an insignificant and unrepresentative segment of the class of persons . . .' that may purchase the product." *Id.* (citation omitted).

Here, Plaintiff similarly fails to plausibly allege that a reasonable consumer, acting reasonably under the circumstances, would share in her reading of the package. Plaintiff does not allege that the Product's packaging contains any express representation that a single tablet provides 1000 mg of Vitamin C; nor could Plaintiff truthfully make such allegations. The statement "Vitamin C 1000 mg" does not appear in isolation. It appears inside of a distinct packaging element which lists the "7 Key Nutrients for Immune Support" including "Vitamin C 1000 mg + Vitamin D + Vitamin A + E + Selenium + Manganese." Plaintiff does not allege that the Product did not contain these nutrients or that this statement is somehow untruthful when read in context.

Consistent with federal and California law, Defendant separately includes an accurate disclosure of the net quantity of tablets on the Product's front panel.[3] *See* 21 C.F.R. § 101.7(a); Cal. Health & Safety Code § 110100 (adopting federal regulations). This separate net quantity disclosure of "64 Chewable Tablets" in the bottom right corner merely informs the consumer of the total number of tablets contained in the Product; it says nothing about the dosage of any individual tablet.

Plaintiff's alleged reading is even more unreasonable when considered in the context of shopping for a vitamin supplement. As the Ninth Circuit has recognized, a reasonable consumer does not ignore generally known facts about the type of product she is considering purchasing. *See Moore* 4 F.4th 874 at 882-83 (discussing "contextual inferences from the product itself" and what consumers "generally know" about the product category in affirming dismissal).

---

[3] To the extent that Plaintiff challenges the accuracy of this mandatory net quantity disclosure, her claim is barred by California's safe harbor doctrine. *See Ebner*, 838 F.3d at 963 (explaining that "[i]n California, unfair competition claims are subject to the safe harbor doctrine, which precludes plaintiffs from bringing claims based on 'actions the Legislature permits'" and finding challenge to the accuracy of a net weight statement cannot form the basis of an unfair competition claim) (quoting *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163 (1999)).

Here, a reasonable consumer, in the context of shopping for a vitamin supplement, is generally familiar with and understands that supplement products contain specific dosing instructions on the package for safe use. With this reality in mind, a consumer reviewing the front of the package would not simply assume that the statements "Vitamin C 1000 mg" and "64 Chewable Tablets" on the Product's front panel should be construed to mean that each individual tablet contains 1000 mg of Vitamin C. Plaintiff's attempt to cobble these words together to mean that the Product promises a serving size of one tablet is belied by a plain reading of the package and would require a series of inferential leaps that defy common sense.

Accordingly, a reasonable consumer would not find these statements to be "unambiguously deceptive" as to the proper dosing for the Product.

**2. Context Provided By The Rest Of The Product's Packaging (Omitted From Plaintiff's Amended Complaint) Further Confirms That The Recommended Dose Is "Four Tablets".**

Where a front package statement is not "unambiguously deceptive", the Ninth Circuit has explained that a reasonable consumer "would necessarily require more information" before making assumptions about the product. *See Whiteside*, 108 F.4th at 781; *McGinity v. The Procter & Gamble Co.*, 69 F.4th 1093, 1099 (9th Cir. 2023) ("the front label must be unambiguously deceptive for a defendant to be precluded from insisting that the back label be considered together with the front label"); *see also Bryan v. Del Monte Foods, Inc.,* No. 23-3685, 2024 U.S. App. LEXIS 29809, at *3 (9th Cir. Nov. 22, 2024) (affirming dismissal where "the back label accurately and clearly discloses several synthetic ingredients about which Plaintiff complains").

For example, in *McGinity*, the Ninth Circuit affirmed dismissal where the Plaintiff alleged that she was misled by the defendant's shampoo and conditioner products called "Pantene Pro-V Nature Fusion" that featured an image of an avocado on a green leaf and a gold vitamin on the front label. 69 F.4th at 1095-96.

The plaintiff argued that she read and understood these statements and images together to mean that all of the product's ingredients were "natural," even though it was made with both natural and synthetic ingredients. *Id.* at 1096.

In reviewing the product's front label, the Ninth Circuit reasoned that the front label was, at best, "ambiguous" because "Nature Fusion" could mean "that the products are made with a mixture of natural and synthetic ingredients, that the products are made with a mixture of different natural ingredients, or something else entirely." *Id.* at 1098. The Court noted that "[a]lthough the front label represents that something about the product bears a relationship to nature, the front label does not make any affirmative promise about what proportion of the ingredients are natural." *Id.* at 1099. In finding that no reasonable consumer would be deceived, the Court explained that any "ambiguity can be resolved by reference to the back label" where the ingredients list "clarifies that the rest of the ingredients are artificial and that the products thus contain both natural and synthetic ingredients." *Id.*

Here, the Ninth Circuit's reasoning in *McGinity* applies with full force. As discussed above, there is no statement on the front of the Product representing that the proper dosing is one tablet. At best, following the series of inferential leaps required by Plaintiff's alleged reading, there is ambiguity regarding the dosing for the Product. However, as in *McGinity*, any perceived ambiguity in these front panel statements is completely dispelled in *three places* on the Product's packaging:

1. The FDA-mandated Supplement Facts panel unequivocally states that for consumers "14 years of age and older", the proper serving size is "4 tablets" (*See* RJN Ex. 1 at p. 3);
2. The "**DIRECTIONS**" for use of the Product above the Supplement Facts instruct "Adults and children 14 years of age and older" to "Chew four (4) tablets daily" (*Id.*); and

3. A large black banner on reverse panel again states "4 CHEWABLE TABLETS = 7 IMMUNE SUPPORTING INGREDIENTS*" and lists out the ingredients, including "1000 mg of Vitamin C" (*Id.* at p. 2).

The Product's package also depicts the four tablets on yet another panel. RJN Ex. 1 at p. 4. Given these disclosures, which each state that the proper dose is four tablets for adults, a reasonable consumer would not share in Plaintiff's alleged interpretation of the front panel and her claims under the CLRA, UCL, and FAL should be dismissed. *McGinity*, 69 F.4th at 1099; *Bryan,* 2024 U.S. App. LEXIS 29809, at *3.

Defendant anticipates that Plaintiff may attempt to rely on the California Court of Appeal's holding in *Brady v. Bayer Corp.*, 26 Cal. App. 5th 1156 (2018) in her opposition. However, *Brady* is readily distinguishable. In *Brady*, the product was called "One A Day," and the court found that the front label "fairly shouts that one per day will be sufficient." *Id.* at 1172. The court thus concluded that the product name itself constituted an affirmative representation regarding daily intake – "[i]f the label prominently displays the words 'One A Day' there is an implication that the daily intake should be one per day." *Id.*

No such affirmative representation exists here. Unlike "One A Day," the Product's front panel contains no statement – explicit or implicit – regarding the number of tablets constituting a proper daily dose. As discussed above, the front panel, at best, creates ambiguity regarding dosing, and under *McGinity*, such ambiguity "can be resolved by reference" to the rest of the package. 69 F.4th at 1099. In fact, the *Brady* court itself acknowledged that reasonable consumers could be expected to consult the Supplement Facts panel if the product's name did not affirmatively convey a dosing instruction – as "might be the case if this product were called Gazorninplat Gummies or Every Day Gummies." *See* 26 Cal. App. 5th at 1172. That is precisely the situation here. The Product's name is not "AIRBORNE *One a Day* Chewable Tablets". It is "AIRBORNE Immune Support".

The front panel makes no dosing claim, and the Supplement Facts panel, Directions, and prominent black banner on the packaging each unequivocally disclose that the proper dose is four tablets.

Accordingly, Plaintiff's alleged interpretation would not be shared by a reasonable consumer, and her claims should be dismissed with prejudice.

**B. Plaintiff Has Not Plausibly Alleged Any Predicate Violations To Support A Claim Under The UCL's Unlawful Prong.**

The UCL's "unlawful" prong "borrows violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable." *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012); *Rubenstein v. The Gap, Inc.*, 14 Cal. App. 5th 870, 880 (2017) ("[A] violation of another law is a predicate for stating a cause of action under the UCL's unlawful prong." (citation omitted)). Where a plaintiff fails to plead the elements of the alleged predicate law, dismissal of a UCL "unlawful" prong claim is required. *Wilson*, 668 F.3d at 1140; *Birdsong v. Apple, Inc.*, 590 F.3d 955, 960 n.3 (9th Cir. 2009) (holding that the plaintiffs could not state a UCL unlawful prong claim because they "failed to allege" the predicate violation).

As an initial matter, to the extent Plaintiff premises her "unlawful" prong claim on the alleged violations of the CLRA and FAL (Amended Compl. ¶ 65), that claim necessarily fails for the same reasons set forth above in Section IV.A.

Plaintiff further alleges that her "unlawful" prong claim is predicated on "violating California Civil Code §§ 1709-1711", "violating the California Commercial Code for breaches of express and implied warranties", and "violating California's Sherman Act, Cal. Health & Safety Code § 110390." Amended Compl. ¶ 65. But Plaintiff makes no effort whatsoever to plead the specific elements of any of these statutes – precisely the type of "formulaic recitation" that *Twombly* holds insufficient to survive a motion to dismiss. *Twombly,* 550 U.S. at 548. This failure alone warrants dismissal. *Id.*; *Wilson*, 668 F.3d at 1140; *Birdsong*, 590 F.3d at 960.

Even if the Court were to look beyond this pleading deficiency, Plaintiff has not plausibly alleged facts sufficient to state a claim under any of these statutes.

California Civil Code §§ 1709-1711 each require a plaintiff to plausibly allege "intent" to defraud – i.e., that the defendant was *aware* of the allegedly fraudulent conduct at the time of sale. *See Wilson*, 668 F.3d at 1140 (affirming dismissal of UCL unlawful prong claim predicated on Cal. Civ. Code §§ 1709 and 1710 where the plaintiff failed to allege the requisite intent element); Cal. Civ. Code § 1711. Plaintiff has not done so. At best, Plaintiff offers the bare conclusion that Defendant "knowingly and intentionally conceal[ed] from Plaintiff" that each unit of the Product did not contain its "advertised dosage".[4] Amended Compl. ¶ 65. But such "merely conclusory" allegations are insufficient to establish intent as a matter of law. *Wilson*, 668 F.3d at 1140. The defendant must also have committed a fraudulent act or engaged in deception. As set forth above, Plaintiff has not plausibly alleged that the Product's packaging is false or deceptive. Plaintiff therefore has not stated any claims under Cal. Civ. Code §§ 1709-1711.

Plaintiff's breach of express and implied warranty claims fare no better. To state such claims, Plaintiff must identify an "affirmation of fact or promise or a description of the goods" or "promises or affirmation of fact made on the container or label" of the Product. Cal. Com. Code § 2313; Cal. Com. Code § 2314(2)(f). She has not done so. As discussed above, nowhere on the Product's packaging does it promise or state that the proper dosing is one tablet. Absent any such affirmation, Plaintiff has not stated any breach of warranty claims.

Plaintiff cannot state an implied warranty claim for an additional, independent reason: she has not alleged vertical privity with Defendant. The Ninth Circuit has held that "a plaintiff asserting a breach of implied warranty claim must stand in

---

[4] Plaintiff's allegations are also belied by the Product's packaging. Defendant could not have plausibly intended to "conceal" the dosing information – it was openly disclosed on the Product in three separate locations. *See* RJN Ex. 1.

vertical privity with the defendant." *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1023 (9th Cir. 2008). "A buyer and seller stand in privity if they are in adjoining links of the distribution chain. Thus, an end consumer . . . who buys from a retailer is not in privity with a manufacturer." *Id.* (citation omitted). Because Plaintiff alleges only that she purchased the Product from a third-party retailer (Amended Compl. ¶ 11), she has not and cannot establish vertical privity with Defendant. Her implied warranty claim thus fails as a matter of law.

Finally, section 110390 of the Health & Safety Code makes it unlawful to "disseminate any false advertisement of any food." This requires Plaintiff to plausibly allege that a reasonable consumer would be misled by the Product's packaging. *See Wong v. Iovate Health Scis. U.S.A. Inc.*, No. 2:24-cv-00901-DAD-CKD, 2025 U.S. Dist. LEXIS 47232, at *26 (E.D. Cal. Mar. 14, 2025) (applying reasonable consumer test to alleged Sherman Law violation and dismissing UCL claim) (collecting cases). As set forth above, Plaintiff has not done so, and her attempt to state a claim under the Sherman Law thus fails for the same reasons.

Accordingly, Plaintiff's UCL "unlawful" prong claim should be dismissed in its entirety.

### C. Plaintiff Lacks Standing To Bring Claims Related To The Unpurchased Products.

A person has statutory standing to bring a claim under the UCL, FAL, or the CLRA "*only if* she establishes that (1) she 'has suffered' 'economic injury' or 'damage,' and (2) this injury or damage 'was the result of, i.e., *caused by*,' the unfair business practice, false advertising or the CLRA violation 'that is the gravamen of [her] claim.'" *Shaeffer*, 44 Cal. App. 5th at 1137 (emphasis original).

In light of this statutory requirement, "[t]here is a split in authority among district courts in the Ninth Circuit [regarding] whether plaintiffs have Article III standing to bring claims for products they did not personally purchase but that were purchased by unnamed class members." *Oh v. Fresh Bellies, Inc.*, No. CV 24-5417

PSG (JPRx), 2024 U.S. Dist. LEXIS 189574, at *9 (C.D. Cal. Oct. 15, 2024) (collecting cases). On one hand, a number of district courts have recently found that "the 'substantial similarity' analysis appears to be inconsistent with the basic concept of standing." *See id*. at *10. On the other hand, district courts have held that class action plaintiffs can bring claims for products they did not purchase if the products and underlying theories of deception are plausibly alleged to be "substantially similar." *Id.* at *9.

Here, the Court should find that Plaintiff lacks standing to pursue claims against the Unpurchased Products under either approach.

First, Plaintiff has not suffered any cognizable injury related to the Unpurchased Products. "That a suit may be a class action ... adds nothing to the question of standing, for even named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." *McVay v. Kroger Co.*, No. 2:25-cv-06176-SVW-RAO, 2026 U.S. Dist. LEXIS 23559, at *7 (C.D. Cal. Feb. 3, 2026) (citation omitted). Even if Plaintiff had plausibly alleged facts to establish "substantial similarity" to the Unpurchased Products (which for the reasons below, she has not), "[t]he similarity of a product, by itself, does not explain how Plaintiff suffered an injury traceable to the allegedly wrongful conduct of another." *Id.* at *11 (quoting *Lorentzen v. Kroger Co.*, 532 F. Supp. 3d 901, 908 (C.D. Cal. 2021)).

Second, even if this Court were to apply the "substantial similarity" test, Plaintiff has failed to plead facts sufficient to demonstrate that the Unpurchased Products are "substantially similar" to the Product that she purchased. "Under the substantial similarity test, courts consider whether the products at issue and alleged misrepresentations are substantially similar." *Gamez v. Summit Naturals Inc.*, No. CV 22-05894 DSF (KSx), 2022 U.S. Dist. LEXIS 231911, at *17-18 (C.D. Cal. Oct. 24, 2022). "Products are substantially similar where the *resolution of the asserted*

*claims will be identical between the purchased and unpurchased products*." *Id.* (emphasis added).

Here, Plaintiff's Amended Complaint omits sufficient allegations from which the Court could conclude that the Product and Unpurchased Products are substantially similar. Plaintiff fails to provide any examples of the packaging for these Unpurchased Products to demonstrate that the allegedly misleading statements on the product packaging are identical to the Product she purchased. Nor does she identify these purportedly misleading statements with any specificity. Rather, Plaintiff simply concludes that "each contain a dosage representation conspicuously and prominently placed on the primary display panel" and the "misleading advertising" on the Unpurchased Products' "front labels are all the same." *See* Amended Compl. ¶¶ 36-37. But Plaintiff's mere conclusions are not entitled to any presumption of truth. *Iqbal*, 556 U.S. at 678.

Thus, any claims relating to the Unpurchased Products should be dismissed from the Amended Complaint.

**D. Plaintiff Lacks Standing To Pursue Injunctive Relief.**

To establish standing for injunctive relief, a plaintiff must demonstrate a "a real and immediate threat of repeated injury in the future." *Chapman v. Pier 1 Impos. Inc.*, 631 F.3d 939, 946 (9th Cir. 2011); *see also Gest v. Bradbury*, 443 F.3d 1177, 1181 (9th Cir. 2006). "Where standing [for injunctive relief] is premised entirely on the threat of repeated injury, a plaintiff must show 'a sufficient likelihood that [she] will again be wronged in a similar way.'" *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956 (9th Cir. 2018) (citation omitted).

Consistent with this requirement, courts routinely dismiss claims for injunctive relief where, as here, a plaintiff can simply review a product's label in the future to avoid the alleged harm. *See Kenney v. Fruit of the Earth, Inc.,* No. 23-55583, 2024 U.S. App. LEXIS 27083, at *3 (9th Cir. Oct. 25, 2024) (affirming dismissal of injunctive relief claim where the plaintiff "need not purchase the

sunscreen again to determine whether it has non-zinc active ingredients"); *Cordes v. Boulder Brands USA, Inc.*, No. CV 18-6534 PSG (JCx), 2018 U.S. Dist. LEXIS 217534, at *12-13 (C.D. Cal. Oct. 17, 2018) (finding plaintiff lacked standing for injunctive relief because "now that [p]laintiff is on notice about potential underfilling, he could easily determine the number of pretzels in each package before making a future purchase by simply reading the back panel"); *McVay*, 2026 U.S. Dist. LEXIS 23559, at *12-13 (dismissing injunctive relief claim where "plaintiffs now know to check the ingredients list on the packaging to determine if defendants added citric acid to the products at issue").

The same result is warranted here. There is no plausible likelihood that Plaintiff will suffer the same alleged injury again because Plaintiff is now fully aware of the presence of the Product's dosing instructions on the package. As recognized in her Amended Complaint, the dosing information appears in the Product's Supplement Facts panel, precisely where FDA regulations require it to be disclosed. *See* Amended Compl. ¶ 13 (depicting Supplement Facts). Plaintiff can therefore determine the proper dosing by simply reading the package – without opening, using, or even purchasing the Product again. Because Plaintiff's own knowledge eliminates any threat of future harm, she lacks standing to pursue injunctive relief, and her claim should be dismissed.

## V. <u>CONCLUSION</u>

For the foregoing reasons, Defendant respectfully requests the Court dismiss the Amended Complaint with prejudice.

Dated: August 14, 2026

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By *_/s/ Khirin A. Bunker_*

SASCHA HENRY
KHIRIN A. BUNKER
PAUL W. GARRITY

Attorneys for Defendant
RB HEALTH (US) LLC

**CERTIFICATE OF COMPLIANCE**

The undersigned counsel of record for Defendant RB Health (US) LLC certifies that the foregoing brief contains 5,305 words which complies with the word limit of Local Rule 11-6.1.

Dated: August 14, 2026

By *\/s/ Khirin A. Bunker*
KHIRIN A. BUNKER